NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROSPECT PHARMACY, LLC, et al.,<br><br>Plaintiffs,<br>v.<br>WALGREEN EASTERN CO., INC.,<br><br>Defendant | **OPINION**<br><br>Civil Action No.: 14-3399 (JLL) |
| NAIEM PHARMACY CORP., et al.,<br><br>Plaintiffs,<br>v.<br>WALGREEN EASTERN CO., INC.,<br><br>Defendant | Civil Action No.: 14-3400 (JLL) |

The above actions arise out of the purchase by Walgreens of certain business assets of two pharmacies, Plaintiff Prospect Pharmacy, LLC (located in Prospect Park, NJ) and Naiem Pharmacy Corp. (located in Haledon, NJ). This matter comes before the Court by way of Defendant Walgreen's motion to consolidate and dismiss the complaints filed by Prospect Pharmacy, LLC (Civil Action No. 14-3399) and Naiem Pharmacy Corp. (Civil Action No. 14-3400), respectively. The Court has considered the submissions made in support of and in opposition to the instant motions. No oral argument was heard. Fed. R. Civ. P. 78. Because of the similarity of the complaints filed in both actions, and given the nearly identical motion to dismiss now pending in each case, the Court will consider both motions in this Opinion. Based on the reasons that follow,

1

Defendant's motions to consolidate and dismiss the complaints filed by Plaintiffs in Civil Action Nos. 14-3999 and 14-3400 are **granted.** Plaintiffs may file an Amended Complaint that cures the pleading deficiencies in Counts One and Four, only, **on or before September 5, 2014.**

## BACKGROUND

A.  **Prospect Pharmacy Complaint**

Plaintiff Prospect Pharmacy, LLC, a New Jersey limited liability company with its principal place of business in New Jersey, was the owner and operator of a retail pharmacy located at 214 Haledon Avenue, Prospect Park, New Jersey. (Compl., ¶ 1). Plaintiffs Naiem and Naser Obeidallah, both of whom reside in New Jersey, are the owners of Prospect Park Pharmacy. (Id., ¶ 2). Defendant Walgreens is a New York corporation with its principal place of business in Illinois. (Notice of Removal, ¶ 6).

In anticipation of its proposed opening of a new Walgreens retail pharmacy in Haledon, on October 5, 2012, Walgreens entered into an Asset Purchase Agreement with Prospect Pharmacy. (Compl., ¶ 4). The Asset Purchase Agreement provided for the sale by Prospect Pharmacy of certain of its business assets, "principally, its prescriptions, prescription files, records, customer lists and patient profiles . . . in addition to [its] inventory of prescription pharmaceutical products." (*Id.*, ¶ 5). Pursuant to the Asset Purchase Agreement, $759,000 was payable by Walgreens to Prospect Pharmacy at the closing of the sale, and an additional $125,000 was "subject to a Prescription Earnout on the basis of the prescription volume generated from [Prospect] Pharmacy's customers over the 12-month period commenced by the closing date." (*Id.*, ¶ 6).

2

The Complaint alleges that approximately 80% of Prospect Pharmacy's prescription volume was Medicaid supported and that Walgreens was aware of this. (Compl., ¶ 8). The Complaint goes on to allege that "Defendant failed to act in a reasonable manner to obtain a Medicaid provider number for the New Walgreen Store and did not obtain such authorization until approximately six (6) months from the closing date." (*Id*., ¶ 9). As a result, the Complaint alleges that "the vast majority of [Prospect] Pharmacy's former patients could not be serviced by Defendant at the New Walgreen Store during the critical period following the closing of [Prospect] Pharmacy's Store. (*Id*., ¶ 10). It is further alleged that, at the conclusion of the one year earnout period, Walgreens advised Plaintiff that the average daily number of customer prescriptions from its former customers had substantially declined and that no portion of the $125,000 earnout amount was payable under the terms of the Asset Purchase Agreement. (*Id*., ¶ 12). Walgreens allegedly offered no documentation to support its calculations. (*Id*., ¶ 13).

**B.    Naiem Pharmacy Complaint**

Plaintiff Naiem Pharmacy Corp., a New Jersey corporation with its principal place of business in New Jersey, was the owner and operator of a retail pharmacy located at 447 Belmont Avenue, Haledon, New Jersey.  (Compl., ¶ 1).  Plaintiffs Mohammed A. and Moina Naiem, both of whom reside in New Jersey, are the owners of Naiem Pharmacy Corp. (*Id*., ¶ 2).  Defendant Walgreens is a New York corporation with its principal place of business in Illinois.  (Notice of Removal, ¶ 4).

In anticipation of its proposed opening of a new Walgreens retail pharmacy in Haledon, on October 5, 2012, Walgreens entered into an Asset Purchase Agreement with Naiem Pharmacy.

3

(Compl., ¶ 4). The Asset Purchase Agreement provided for the sale by Naiem Pharmacy of certain of its business assets, "principally, its prescriptions, prescription files, records, customer lists and patient profiles . . . in addition to [its] inventory of prescription pharmaceutical products." (*Id*., ¶ 5). Pursuant to the Asset Purchase Agreement, $880,112 was payable by Walgreens to Naiem Pharmacy at the closing of the sale, and an additional $300,000 was "subject to a Prescription Earnout on the basis of the prescription volume generated from [Naiem] Pharmacy's customers over the 12-month period commenced by the closing date." (*Id*., ¶ 6).

The Complaint alleges that approximately 80% of Prospect Pharmacy's prescription volume was Medicaid supported and that Walgreens was aware of this. (Compl., ¶ 8). The Complaint goes on to allege that "Defendant failed to act in a reasonable manner to obtain a Medicaid provider number for the New Walgreen Store and did not obtain such authorization until approximately six (6) months from the closing date." (*Id.,* ¶ 9). As a result, the Complaint alleges that "the vast majority of [Naiem] Pharmacy's former patients could not be serviced by Defendant at the New Walgreen Store during the critical period following the closing of [Naiem] Pharmacy's Store. (*Id*., ¶ 10). It is further alleged that, at the conclusion of the one year earnout period, Walgreens advised Plaintiff that the average daily number of customer prescriptions from its former customers had substantially declined and that only $50,000 of the $300,000 earnout amount was payable under the terms of the Asset Purchase Agreement. (*Id*., ¶ 12). Walgreens allegedly offered no documentation to support its calculations. (*Id*., ¶ 13). It is further alleged that Naiem Pharmacy has rejected Walgree's tender of the $50,000 earnout amount. (*Id*., ¶ 14).

4

C.  **Procedural Background**

In light of the foregoing, Prospect Pharmacy and Naiem Pharmacy filed suit against Walgreens in state court in March 2014. Both complaints contain the following causes of action against Walgreens: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) unjust enrichment, and (4) common law fraud. Both complaints were removed to this Court by Defendant Walgreens in May 2014. This Court's jurisdiction over both actions is premised on 28 U.S.C. § 1332. Walgreens has filed a motion to dismiss both complaints pursuant to Federal Rule of Civil Procedure 12(b)(6), and/or a request to consolidate both actions pursuant to Federal Rule of Civil Procedure 42(a).[1]

## **LEGAL STANDARD**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien &*

---

1 Although Plaintiffs suggest that New Jersey procedural law should apply in this case because both complaints were originally filed in state court, "*Erie* provides that a federal court sitting in diversity must apply substantive state law and federal procedural law." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

*Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## DISCUSSION

**A.     Motion to Consolidate**

Defendant Walgreens has filed a motion to consolidate both actions pursuant to Federal Rule of Civil Procedure 42(a). None of the Plaintiffs in either action oppose this aspect of Walgreens' motion.

Rule 42(a) provides that a court may consolidate cases if the cases involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). All parties agree that both complaints involve common questions of law and fact regarding the sale of the same category of business assets by two pharmacies to Walgreens pursuant to nearly identical Asset Purchase Agreements. Accordingly, pursuant to Rule 42(a), this Court hereby **grants** Defendant's unopposed motion to consolidate Civil Action 14-3399 with Civil Action No. 14-3400. This matter shall proceed under Civil Action 14-3399. All inquiries concerning the logistics and implications of the consolidation going forward shall be directed to Magistrate Judge Dickson.

**B.     Motions to Dismiss**

Defendant Walgreens moves to dismiss all claims asserted by Plaintiffs, respectively. The Court will address each claim, in turn.

### 1. Breach of Contract

Both complaints allege, in Count One, that Walgreens entered into an Asset Purchase Agreement with the Plaintiffs, respectively, and that pursuant to said Agreement, certain amount was payable by Walgreens at the closing of the sale ("closing amount") and an additional amount was "subject to a Prescription Earnout on the basis of the prescription volume generated from Pharmacy's customers over the 12-month period commenced by the closing date" ("earnout amount"). Both complaints allege that Walgreens breached the Asset Purchase Agreement by failing to make payment of the earnout amount at the end of the one year earnout period. *See* Prospect Compl., ¶ 16; Naiem Compl., ¶ 17.

In support of its motion to dismiss, Walgreens has attached, for the Court's consideration, copies of the relevant Asset Purchase Agreements. *See* Iida Decl., Ex. A. The Court may consider these documents without converting Defendants' motion into one for summary judgment inasmuch as: (1) Plaintiffs do not dispute the authenticity or applicability of same, and (2) the Asset Purchase Agreements are not only referenced in, but are, in fact, integral to Plaintiffs' complaints, as a whole. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) ("A 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.' "). Section 12.8 of both Asset Purchase Agreements provides that the agreements shall be governed by and construed in accordance with the laws of the State of Illinois. Plaintiffs do not dispute that Illinois law applies to their claims; thus, the Court will apply Illinois law in assessing whether Plaintiffs have met their burden of stating a claim to relief that is plausible on its face.

To state a breach of contract claim under Illinois law, Plaintiffs must establish: "(1) an

7

offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiffs' performance of all required contractual conditions; (5) defendants' breach of the terms of the contract; and (6) damage resulting from the breach." *Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 1082 (1998).

Having carefully considered the arguments raised by the parties and the facts alleged in the operative complaints, the Court concludes that Plaintiffs have failed to allege a facially plausible breach of contract claim because they allege no facts suggesting—much less showing—that they actually earned and were thus entitled to the earnout amount under the Asset Purchase Agreement. In other words, neither complaint alleges that Walgreens generated the level of prescription volume (from customers of either the Prospect or Naiem Pharmacy) necessary to trigger the Prescription Earnout provision.[2]   To the contrary, Plaintiffs admit that "the vast majority of [their] former patients could not be serviced by Defendant at the New Walgreen Store during the critical period following the closing of [Prospect and/or Naiem] Pharmacy." (Prospect Compl., ¶ 10; Naiem Compl., ¶ 10).  Absent any facts suggesting that Plaintiffs are legally entitled to the earnout amount they seek, Plaintiffs have failed to allege sufficient facts that would allow this Court to draw the reasonable inference that Walgreens breached the Prescription Earnout Provision of the Asset Purchase Agreement by failing to tender payment to Plaintiffs thereunder.

To the extent Plaintiffs' complaints should be construed as alleging that Walgreens breached the Asset Purchase Agreement by failing to provide Plaintiffs with an accounting for the

---

2 In the case of the Naiem Complaint, Plaintiffs do not allege that Walgreens generated a level of prescription volume that, pursuant to any particular provision of the Asset Purchase Agreement, required Walgreens to pay Naiem Pharmacy an earnout amount above and beyond the $50,000 that was already paid to them pursuant to the Prescription Earnout provision.

number of prescriptions which it filled from Plaintiffs' customers in the year following the closing, Plaintiffs cite to no provision of the Asset Purchase Agreement requiring Walgreens to provide such an accounting, much less as a condition precedent to determining that no portion of the earnout amount(s) was payable under the terms of the Asset Purchase Agreement.

Similarly, to the extent Plaintiffs' complaints should be construed as suggesting that Walgreens breached the Asset Purchase Agreement by failing to obtain its Medicaid provider authorization until six months after the closing date, Plaintiffs cite to no provision of the Asset Purchase Agreement requiring Walgreens to obtain such Medicaid provider authorization, much less within a certain period of time prior to or following the closing.

Defendants' motion to dismiss Plaintiffs' breach of contract claims is granted. Plaintiffs' breach of contract claims are hereby dismissed *without* prejudice.

### 2.     **Breach of Covenant of Good Faith and Fair Dealing**

Count Two of Plaintiffs' complaints assert claims for breach of the covenant of good faith and fair dealing. In particular, Plaintiffs allege that "Defendant breached [the] implied covenants of good faith and fair dealing under the Asset Purchase Agreement by failing to obtain Medicaid provider authorization in a timely manner and by failing to keep the detailed records required for the proper calculation of the earnout amount due [to] the [Plaintiffs]."

"Although every contract implies good faith and fair dealing, the duty of good faith and fair dealing is . . . a derivative principle of contract law. While this obligation exists in every contract in Illinois, it is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Resolution Trust Corp. v.*

*Holtzman,* 248 Ill. App. 3d 105, 112 (Ill. App. 1 Dist. 1993). Thus, "breach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except 'in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.' " *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (citation omitted); *see also Zeidler v. A & W Restaurants, Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("[W]e note that the district court correctly dismissed on the pleadings the Zeidlers' remaining claim that A & W breached an independent covenant of good faith and fair dealing. The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law.").

Thus, to the extent Plaintiffs have attempted to assert an independent cause of action for breach of the covenant of good faith and fair dealing, such claim is dismissed *with* prejudice because it is not a viable independent claim under Illinois law.[3] Defendants' motion to dismiss Count Two of Plaintiffs' Complaints is granted. Although this claim is dismissed *with* prejudice, Plaintiffs may amend their breach of contract claim to include specific facts to substantiate the theory that Walgreens breached its implied obligation to carry out its contractual duties in good faith. *See, e.g., Resolution Trust*, 248 Ill. App. 3d at 112-113 ("Generally, problems involving the duty of good faith and fair dealing arise where one party to a contract is given broad discretion in performance. The doctrine of good faith then requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."). Conclusory statements and

---

3 Thus, the Court finds that any future amendment of this particular claim as a standalone claim would be futile.

legal conclusions will not, however, suffice.

### 3. Unjust Enrichment

Plaintiffs assert, in Count Three of their respective complaints, claims of unjust enrichment. In particular, Plaintiffs allege that "Defendant was unjustly enriched by having received the business and goodwill associated with [Plaintiffs'] former clientele without compensating Plaintiffs."

"[A] claim for unjust enrichment . . . is unavailable [under Illinois law] where the claim rests on the breach of an express contract." *Shaw v. Hyatt Intern. Corp.*, 461 F.3d 899, 902 (7th Cir. 2006). Plaintiffs do not dispute, in their respective complaints, the existence of a valid and enforceable contract governing the parties' relationship and obligations vis-à-vis Walgreens' purchase of Plaintiffs' "former clientele." In fact, Plaintiffs do not oppose Walgreens' motion to dismiss this particular claim.

Because Plaintiffs' claims of unjust enrichment rest on Walgreens' alleged breach of the parties' respective Asset Purchase Agreements, Plaintiffs have failed to state a viable claim of unjust enrichment under Illinois law.[4] Defendant's motion to dismiss such claims is granted. Plaintiffs' unjust enrichment claims are hereby dismissed *with* prejudice.

### 4. Fraud

Lastly, Plaintiffs assert claims of fraud against Walgreens. In particular, Plaintiffs allege that "Defendant made material misrepresentations to Plaintiffs that it would adhere to the terms of

---

4 Thus, the Court finds that any future amendment of this claim would be futile.

the Asset Purchase Agreement, namely, that it would take appropriate action to place itself in a position to accept the prescriptions of the former clientele of [Plaintiffs] and that it would keep proper records to determine the correct earnout amount payable under the terms of the Asset Purchase Agreement."  Plaintiffs further allege that "Plaintiffs relied upon those representations in agreeing to sell the assets forming the subject matter of the Asset Purchase Agreement" and that "Defendant, in bad faith and with malice, failed to take appropriate steps to obtain approval as a Medicaid provider and to maintain records as to the prescription volume from [Plaintiffs'] former clientele."  Defendant moves to dismiss Plaintiff's fraud claims on the basis that Plaintiffs have failed to allege the circumstances of Walgreens' alleged fraud with the particularity required by Rule 9(b) of Federal Rules of Civil Procedure.

To state a claim for common law fraud in Illinois, Plaintiffs must allege: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury. *Siegel v. Levy Organization Development Co., Inc*., 153 Ill. 2d 534, 542-543 (1992).  In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach.*

12

*Corp.,* 742 F.2d 786, 791 (3d Cir.1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Plaintiffs must also allege who made the purported misrepresentations and what specific misrepresentations were made. *See, e.g., Frederico v. Home Depot*, No. 05–5579, 2006 WL 624901, at *2 (D.N.J. Mar.10, 2006).

There is no question that Plaintiffs' complaints fail to allege any specific misrepresentation(s) made by anyone in particular on behalf of Walgreens, or when such alleged misrepresentations were made. Certainly, neither complaint contains any facts suggesting that Walgreens (or any of its employees) had knowledge of the falsity of any particular statements they made to Plaintiffs. *See, e.g., United States, ex rel. Pilecki–Simko v. Chubb Inst.*, 443 Fed. Appx. 754, 760–761 (3d Cir. 2011) (finding insufficient facts to support element of knowledge where the complaint alleged, generally, that "Chubb ... knowingly uses ... false records or statements ...."); *see generally In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256,282 (3d Cir. 2006) ("A pleading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company."). Although Plaintiffs need not prove their claims without the benefit of discovery, Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (emphasis added). To be clear, Plaintiffs' case cannot proceed to discovery if the operative complaint fails to meet the threshold pleading requirement of Rule 8(a).

In short, Plaintiffs have failed to plead the date, time and/or place of the alleged fraud by

13

Walgreens.  Nor have Plaintiffs otherwise injected some measure of substantiation into their allegations of fraud as against Walgreens.  Absent such factual content, Plaintiffs' allegations of fraud are insufficient to pass muster under Rule 8(a), much less to meet Rule 9(b)'s heightened pleading standard.  *See generally Frederico*, 507 F.3d at 200.  Defendant's motion to dismiss Plaintiff's fraud claims is granted.  Plaintiffs' fraud claims are therefore dismissed without prejudice.

## CONCLUSION

Based on the reasons set forth above, Defendant's unopposed motion to consolidate Civil Action 14-3399 with Civil Action No. 14-3400 is **granted**.  This matter shall proceed under Civil Action 14-3399.

Defendant's motion to dismiss Plaintiffs' complaints is **granted**.  Counts One (breach of contract) and Four (fraud) are hereby dismissed *without* prejudice.  Counts Two (breach of the implied covenant of good faith and fair dealing) and Three (unjust enrichment) are hereby dismissed *with* prejudice.  Plaintiffs may file an Amended Complaint that cures the pleading deficiencies in Counts One and Four *only* **on or before September 5, 2014.**  Plaintiffs' failure to do so will result in dismissal of Counts One and Four *with* prejudice.

An appropriate Order accompanies this Opinion.

Date: July 24, 2014

s/ Jose L. Linares
Jose L. Linares
United States District Judge